STATE OF MINNESOTA *ex rel.* W. J. Hahn, Attorney General, and another *vs.* ELLA GORTON.

## May 8, 1885.

School Officers—Right of Women to Vote and hold Office.—The office of county superintendent of schools is an "office pertaining solely to the management of schools," within the meaning of article 7, section 8, of the constitution of the state. Section 8, referred to, takes the matter of allowing women to vote for or hold school offices out from under the provisions of the preceding sections of article 7, and leaves it entirely within the control of the legislature, subject only to the restrictions contained in section 8 itself; under this section the legislature has authority to make women eligible to a school office without giving them the right to vote at an election for such officer.

Same—Eligibility to Office of County Superintendent.—Under Gen. St. 1878, *c.* 36, § 13, women are eligible to the office of county superintendent of schools.

*Quo warranto.* Upon the information of the attorney general, representing that certain so-called votes were improperly cast, at the annual election, in 1883, in the county of Pine, for the respondent as county superintendent of schools for that county, and that she has entered upon and usurped that office and claims and pretends to act as such officer, this writ was issued from this court requiring the respondent to appear and show by what warrant or alleged right she claims to hold such office of county superintendent of schools. The respondent having answered, the parties in interest stipulated as a

fact that if a woman was eligible to and could hold the office in question, the respondent was duly elected at the annual election in 1883, and duly qualified, and the matter was argued and submitted upon such stipulation.

*C. H. Benton*, for relators.

*L. H. McKusick*, for respondent.

MITCHELL, J.[1] The question in this case is whether a woman is eligible to the office of county superintendent of schools. Sections 1, 2, article 7, of the constitution of the state, limit the elective franchise to males of the age of 21 years or upwards belonging to certain specified classes. Section 7 of the same article provides that "every person who, by the provisions of this article, shall be entitled to vote at any election, shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this constitution or the constitution and laws of the United States." Where a constitution thus defines the conditions of eligibility to office, it is undoubtedly true that it is not in the power of the legislature to add to or take from them. It may therefore be conceded that this section, by implication, prohibits the legislature from making a person eligible to an elective office who is not a qualified voter. But in 1875 the people adopted the following amendment (section 8) to this article: "The legislature may, notwithstanding anything in this article, provide by law that any woman, at the age of twenty-one years and upward, may vote at any election held for the purpose of choosing any officers of schools, or upon any measure relating to schools, and may also provide that any such woman shall be eligible to hold any office pertaining solely to the management of schools."

This section, which is in the nature of an enabling act, we think, takes the whole matter of allowing women to vote for or hold school offices from under all the prohibitions and limitations contained in the preceding sections, and leaves it entirely within the control of the legislature, subject only to such limitations and restrictions as are

[1] Berry, J., was absent and took no part in this case.

contained in section 8 itself. Hence the authority granted by it is not subject to the provisions of section 7, which, as we have seen, limits eligibility to office to qualified voters. Therefore, under this amendment, the legislature has the power to enact a law giving to women both the right to vote for and the right to hold school offices; or it may give them the one without giving them the other, in its discretion. The authority to make them eligible to school offices is not at all dependent upon the legislature's having exercised its authority to provide for their voting at elections for such officers. The expression "any *such* woman," in the latter clause of section 8, has reference, not to a woman who has been authorized to vote, but to "any woman at the age of twenty-one years and upward." The only effect of the word "such," as here used, is to limit the class of women who may be made eligible to school offices to those of the age previously named. We think that the expressions "officers of schools," and "any office pertaining solely to the management of schools," are used in this section convertibly; that the latter is a definition of the former; and that an "officer of schools" is one whose "office pertains solely to the management of schools."

The duties of county superintendent of schools, as prescribed by Gen. St. 1878, *c.* 36, §§ 58–74, pertain solely to the management of schools. Hence we conclude that under this amendment the legislature has the power to provide by law that women shall be eligible to this office, and that it may do so without also giving them the right to vote for such officer.

The only remaining question is whether this has been done by Gen. St. 1878, *c.* 36, § 13. The right of voting for school officers, conferred on women by this act, we are satisfied, from an examination of sections 13 and 14, extends only to elections or meetings in school-districts, and to city or village elections in incorporated cities and villages where school officers are chosen at the city or village election. No provision is anywhere made for women voting at a general election for county officers. Hence the sections referred to confer no right upon women to vote for county superintendent of schools. But, if we are correct in the views already expressed, this is of itself unimportant. The language, however, of that part of the section defining

the school offices to which women are eligible is as broad as the constitution itself.    In fact, it is the same.    It reads: "Any woman so entitled to  *  *  *  vote shall be eligible to hold *any* office  *  *  * pertaining solely to the management of schools."    To add to this a limitation to offices for which women are authorized to vote, would, in our judgment, be an unwarranted interpolation.    Our conclusion, therefore, is that the respondent was eligible to, and is entitled to hold, the office of county superintendent of schools.    The writ must therefore be dismissed.

Ordered accordingly.